# EXHIBIT B

Yvette C. Sterling
STERLING LAW FIRM
400 High Street, Suite A
Burlington City, New Jersey 08016
Telephone: (609) 526-2333 / Facsimile: (609) 526-2331

Attorney for Plaintiffs

| | |
|---|---|
| ANDRE WISE, ERICK GONZALEZ, THOMAS FERGUSON, SYLVESTER FAIR, JASPER LYMON and NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE METUCHEN-EDISON BRANCH | : SUPERIOR COURT OF NEW JERSEY<br>: LAW DIVISION<br>:<br>:<br>: MIDDLESEX COUNTY<br>: |
| Plaintiffs, | : Docket No.: Mid. L-8853-09 |
| -against- | :<br>: CIVIL ACTION |
| ROBERT ESTES, JR., in his PERSONAL and BUSINESS CAPACITY; ESTES EXPRESS LINES, WARREN HARZER in his PERSONAL and BUSINESS capacity; JAY SCHMIDT in his personal and business capacity; BRETT COYLE in his personal and business capacity; FRANK AVIGNONE in his personal and business capacity | :<br>: **FIRST AMENDED COMPLAINT**<br>:<br>:<br>:<br>:<br>: |
| Defendants. | : |

#0505 P.002 / 038
01/09/2007 02:30

## DISCRIMINATION

Complaint in Action for Discrimination and Violation of Civil Rights by ANDRE WISE, ERICK GONZALEZ, THOMAS FERGUSON, SYLVESTER FAIR, JASPER LYMON AND THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, METUCHEN-EDISON BRANCH against ROBERT ESTES, JR., in his PERSONAL and BUSINESS CAPACITY; ESTES EXPRESS LINES, WARREN HARZER in his PERSONAL and BUSINESS capacity, WARREN HARZER in his personal and business capacity, JAY SCHMIDT in his personal and business capacity, BRETT COYLE in his personal and business capacity, and FRANK AVIGNONE in his personal and business capacity, seeking monetary damages and a permanent injunction enjoining such discrimination.

Plaintiffs, ANDRE WISE, 10 Oak Place, Irvington, New Jersey 07111, ERICK GONZALEZ, 1881 Patterson Street, Rahway, NJ 07065, THOMAS FERGUSON, 826 Wadsworth St. Plainfield, NJ 07063, SYLVESTER FAIR, 160 Walnut St. Piscataway, NJ 08854, JASPER LYMON, 616 Lyons Avenue, Apt. 308, Irvington, New Jersey 07111, AND THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, METUCHEN-EDISON BRANCH, P.O. Box 86, Edison, NJ 08818, by way of complaint against defendants, state:

2

## THE PARTIES

ANDRE WISE, Plaintiff, is a member of the African American race, a protected class within NJ Stat. Ann. 10:5-1, 42 USC Section 1981, and is a citizen of the state of New Jersey. Mr. Wise commenced employment with Defendant employer in 1995 and was wrongfully terminated in November, 2007.

ERICK GONZALEZ, Plaintiff, is Puerto Rican heritage and is Hispanic, is a member of a protected class within NJ Stat. Ann. 10:5-1, 42 USC Section 1981, and is a citizen of the state of New Jersey. Mr. Gonzalez commenced employment with Defendant employer on April 4, 2002 and was wrongfully terminated on January 19, 2009.

THOMAS FERGUSON, Plaintiff, is a member of the African American race, a protected class within NJ Stat. Ann. 10:5-1, 42 USC Section 1981, and is a citizen of the state of New Jersey. Mr. Ferguson commenced employment with Defendant employer on June 1997 and was wrongfully terminated on November 2008.

SYLVESTER FAIR, Plaintiff, is a member of the African American race, a protected class within NJ Stat. Ann. 10:5-1, 42 USC Section 1981, and is a citizen of the state of New Jersey. commenced employment with Defendant employer on July 7, 1995 and was wrongfully terminated on January 20, 2009.

JASPER LYMON, Plaintiff, is a member of the African American race, a protected class within NJ Stat. Ann. 10:5-1, 42 USC Section 1981, and is a citizen of the state of New Jersey. Mr. Lymon commenced employment with Defendant employer on August 5, 1996 and was wrongfully terminated on September 16, 2009.

THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE METUCHEN-EDISON BRANCH ("NAACP"), Plaintiff, is a national organization

with main office in Maryland and local offices in Metuchen-Edison, New Jersey, and whose mission is to ensure the Constitutionally protected political, educational, social, and economic equality of rights of all persons and to eliminate racial hatred and racial discrimination.

ESTES EXPRESS LINES ("Estes"), Defendant, on information and belief is a registered company of the state of Virginia, doing business in the state of New Jersey, Township of South Plainfield, Middlesex County, and at all times was the agent of defendant and/or conspired and/or acted under color of law, aided, abetted, acquiesced and took actions against the Plaintiffs at the relevant times during which Plaintiffs' civil rights and other rights guaranteed under the New Jersey Constitution were violated.

ROBERT ESTES, JR., Defendant, on information and belief is a resident of the state of Virginia, is an owner and President of ESTES EXPRESS LINES. He allowed, aided and abetted the intentional discrimination and/or at all times acted in contravention to the New Jersey Constitution, and allowed the supervisors employed by him to take actions against the Plaintiffs at the relevant times during which Plaintiffs' civil rights and other rights guaranteed under the New Jersey and Federal Constitutions, state and federal laws were violated.

WARREN HARZER, Defendant, is sued in his personal and business capacity, and on information and belief is a resident of the state of New Jersey. He was a manager working for Estes who, while acting within the scope of his employment, authorized, aided and abetted the acts of others and who intentionally discriminated against Plaintiffs at the relevant times during which Plaintiffs' civil rights and other rights guaranteed under the New Jersey Constitution were violated. He was the direct supervisor of Andre Wise in the Kearney plant.

JAY SCHMIDT, Defendant, is sued in his personal and business capacity, and on information and belief is a resident of the state of New Jersey. He was a manager working for

4

Estes who, while acting within the scope of his employment, authorized, aided and abetted the acts of others and who intentionally discriminated against Plaintiffs at the relevant times during which Plaintiffs' civil rights and other rights guaranteed under the New Jersey Constitution were violated. He was a direct supervisor and illegitimately acted against Andre Wise because of his race.

BRETT COYLE, Defendant, is sued in his personal and business capacity, and on information and belief is a resident of the state of New Jersey. He was an operation manager working for Estes South Plainfield Edison Terminal who, while acting within the scope of his employment, authorized, aided and abetted the acts of others and who intentionally discriminated against Plaintiffs at the relevant times during which Plaintiffs' civil rights and other rights guaranteed under the New Jersey Constitution were violated.

FRANK AVIGNONE, Defendant, is sued in his personal and business capacity, and on information and belief is a resident of the state of New Jersey. He was a terminal manager working for Estes South Plainfield/Edison Terminal who, while acting within the scope of his employment, authorized, aided and abetted the acts of others and who intentionally discriminated against Plaintiffs at the relevant times during which Plaintiffs' civil rights and other rights guaranteed under the New Jersey Constitution were violated.

DOES 1-10, Defendants are various managers, officers and supervisors of Defendant Estes who have ratified, condoned, conspired and/or intentionally discriminated against Plaintiffs, who have not yet been identified, but will be added once their identities have been ascertained.

At all times relevant to this complaint, Defendants were employers or their agents and have the requisite number of employees to be statutorily bound by the New Jersey Constitution, 42

#0505 P.006 / 038     01/09/2007   02:31

USC § 1981 and NJ STAT. 10:5-1-4.  At all times relevant to this complaint, Defendants were acting contrary to the New Jersey Constitution, Article I, Paragraph 19, 42 USC Section 1981 and NJ Stat. Ann. 10:5-1.

## JURISDICTIONAL FACTS

1.    Plaintiffs repeat the allegations in The Parties, as if fully rewritten herein.

2.    This action is based on section Article I, Paragraph 19 of the New Jersey Constitution and section 40-c of the Civil Rights Law, and on 42 USC § 1981, commonly referred to as the Civil Rights Act of 1964. This action is also based on NJ STAT. 10:5-1-4, commonly referred to as the New Jersey Law Against Discrimination.

3.    Defendant Estes is an employer within the meaning of the Civil Rights Act of 1964 as amended.

4.    Plaintiffs are minority individuals within protected classes under the New Jersey Constitution, 42 USC § 1981 and NJ STAT. 10:5-1-4.

## STATEMENT OF CASE

5.    Since commencing employment with Defendant Estes, Plaintiffs performed their respective duties as dock workers (Plaintiffs Fair, Gonzalez, Lymon and Wise) and as a truck driver (Ferguson) according to Estes' reasonable expectations. This is evidenced by the length of time each Plaintiff to this case was employed by Defendant.

6.    Plaintiffs Fair, Ferguson, Gonzalez and Lymon were also told by the Human Resource manager Rene Bloom that they were doing a good job.

#0505 P.007 / 038                                                    01/09/2007  02:31

7.      Plaintiff Lymon in particular was told that he was doing a good job by his supervisor just one week before Defendants ultimately terminated his employment.

8.      Plaintiff Wise certified that he was always on time, worked overtime, and often came in when other employees did not.

9.      Plaintiffs were asked to keep Dock Production sheets in order to show the volume of Plaintiffs' work.

10.     Plaintiffs' good work records were also evidenced by the various "length of service" awards they received.  Plaintiffs also received watches, bonuses, safety awards and other indicia of performing their jobs as expected or above what was expected by their employer.

11.     Plaintiff Eric Gonzalez was made lead man in the summer of 2008, which is one step below a supervisor.  He would have continued in that role but for the improper conduct of Defendants, who requested that he unjustly write up minority employees working under him for non-existent wrongs.

12.     Plaintiffs' discrimination and harassment began when Defendants Avignone and Coyle became their supervisors and determined that they would intentionally discriminate against Plaintiffs or act adversely towards Plaintiffs with the primary motive being Plaintiffs' race and/or ethnicity.

13.     Plaintiff Thomas Ferguson was used by his employer to maintain an account with Modern Line Furniture, which Defendants had previous problems keeping.  Mr. Ferguson took on this account.  Mr. Ferguson worked six days a week without breaks to maintain this account.

Estes without any rest periods.

14.     Mr. Ferguson additionally used to do two runs to Maryland per day for Defendant Estes without any rest periods.

15.     Modern Line Furniture was so grateful for Mr. Ferguson's help that they gave him a gift to show their appreciation.

16.     On or about 2000, Plaintiffs Andre Wise and Jasper Lymon attempted to exercise their rights to unionize, a right which is guaranteed in the state of New Jersey by the New Jersey Constitution, Article I, Paragraph 19.  This began a series of retaliatory acts against Plaintiffs to prevent them from so organizing. These continued and prevented them from unionizing up until their termination as it chilled their desire to join of form a union. For fear of reprisals by Estes.

17.     Defendant Estes continually prevented Plaintiffs from exercising this right, in direct violation of the New Jersey Constitution, Article I, Paragraph 19.

18.     Defendants also in contravention of State and federal laws began intentionally acting against Plaintiffs based on race and on ethnicity.

19.     Plaintiff Andre Wise African American worked for Defendant Estes from 1995 and without any major incident for nearly twelve years.

20.     On or about November, 2007, Mr. Wise was involved in an industrial accident on the job which caused him injury.

21.     Subsequent to this event, Mr. Wise's managers, Defendants Warren Harzer and Jay Schmidt, who had been the main actors acting illegitimately against Mr. Wise all along, determined to use the November, 2007 accident as an excuse to terminate him.

22.     Mr. Wise was also subjected to a random drug test while he was being treated for said work-related injury by Defendant Estes' appointed physician.

8

23.   Estes did not require that many white employees undergo drug testing.

24.   Other white employees similarly situated to Mr. Wise have had several similar accidents. For example, one other employee had several accidents, stole from the employer, and was not terminated for these actions, nor subjected to any random drug tests. However, Defendants did not reprimand these white employees as severely as Mr. Wise, nor did Defendant subject these white employees to random drug testing, despite the fact that it had been common knowledge that these white employees might have some substance dependency issues.

25.   Prior to being terminated by Defendant, Mr. Wise had never received any write-ups or other indicia of Defendant's dissatisfaction with his job performance.

26.   Plaintiff Erick Gonzalez is of Puerto Rican heritage and is Hispanic.

27.   Mr. Gonzalez was injured in an industrial, on-the-job accident on or about December 22, 2008 and was summarily fired on January 19, 2009.

28.   While employed by Defendant Estes, Mr. Gonzalez experienced several derogatory slurs made against his nationality and race.

29.   Mr. Gonzalez was subjected to several discriminatory acts and/or slurs that caused him extreme emotional anxiety and pain.

30.   On December 9, 2008, when asked about his vacation by his managers, Mr. Gonzalez was told "how lucky" he was to be "going to Puerto Rico to eat rice and beans."

31.   When Mr. Gonzalez injured his knee on December 22, 2008, he was called a "lying scum bag" and that he "just wanted to get over" as that is "his Puerto Rican Nature."

32.   Mr. Gonzalez has been called "stupid" and a "mental midget" by his manager.

9

33.     Mr. Gonzalez has also heard his manager Brett Coyle while speaking to Jay Schmidt state that "nothing good comes from Puerto Rico, especially the people."

34.     Mr. Gonzalez has been called a "wigger," a "Mary" and a "Dark meat lover."

35.     Mr. Gonzalez promptly responded to the aforementioned discriminatory treatment by his supervisors and the co-worker harassment by calling HR 15/09 in Virginia to formally lodge a complaint however instead of dealing with the complaint he was directed to speak to Rene Bloom, the Human Resource Manager located in Edison, New Jersey.

36.     Mr. Gonzalez took a vacation that was planned before his injury.  When he returned to work, his supervisors acted as if they did not believe he was injured.  Mr. Gonzales was informed that that there was no work, despite the fact that  this was approximately one month after he was awarded light duty by the doctor.

37.     Mr. Fair and Mr. Gonzales had in fact lodged complaints about their supervisors' treatment to their supervisor, who then informed the Defendant managers about the discrimination and harassment.

38.     In retaliation for his report, Defendant Brett Coyle, Operations Manager, told him that no job was available due to his disability. Despite the fact that Mr. Gonzalez was awarded light duty by the doctor.

39.     Defendants' denial of continued work was in fact retaliation against Mr. Gonzalez for reporting his experiences of discrimination and harassment, and because he was injured on the job.

40.     Mr. Gonzalez alleges that he was treated differently from other similarly situated white employees.

10

41.     Mr. Gonzalez was additionally subjected to hearing derogatory racial slurs being used against other co-workers who were friends and about Government officials who were minorities.

42.     This caused Mr. Gonzalez to suffer a very high stress disorder.

43.     Mr. Gonzalez heard one of his managers, Frank Avignone; state that "that Sly and Jasper were some porch monkeys for talking." Mr. Avignone stated that "Sly didn't want to do a double shift Christmas week so he can drink Colt 45."

44.     The reasons proffered for Mr. Gonzalez' termination, as with Mr. Wise's termination, were a pretext for the real reason, which was intentional discrimination.

45.     Plaintiff Thomas Ferguson a member of the African American race.

46.     Mr. Ferguson worked for Defendant Estes from June 1997 until November 2008, when he was fired for supposedly sleeping on the job.

47.     Mr. Ferguson is a diabetic and alleges that Estes knew of his disability but willfully ignored it rather than reasonably accommodating him by affording him proper break times.

48.     Mr. Ferguson was subjected to disparate treatment as he worked many overtime hours and was never caught doing any act contrary to the Company's policies.

49.     In fact Estes had a history of treating Minority bus drivers differently than other whites for instance Mr. Ferguson could not punch in when he came to work unless his truck was loaded and ready to go other non minorities were allowed to punch in. One of these non-minorities would punch in a drive their girlfriend in the company's vehicle contrary to the company's policy and he was never reprimanded or terminated.

11

50. Mr. Ferguson, Mr. Fair and Mr. Gonzalez were not given the same break time as similarly situated white employees.

51. Mr. Ferguson was subjected to belittling and disparate treatment that was based upon his race, when other similarly situated employees were not subjected to this treatment.

52. Similarly situated white employees who were guilty of worse conduct, such as crashes, were not fired or even reprimanded.

53. After the defendants Avignon and Coyle became their supervisors, Plaintiffs were subjected to belittling, racially-biased treatment.

54. Defendants' proffered reason for firing Mr. Ferguson that he was allegedly sleeping on the job, Mr. Ferguson was in the break room between the loading and unloading of his trucks. Plaintiff believes based upon the conduct of defendants that the rational given for his termination was a pretext for the real reason, which was intentional racial discrimination.

55. Plaintiff Sylvester Fair a member of the African American race.

56. Mr. Fair was hired by Defendant Estes in 1995.

57. In addition to direct harassment, Mr. Fair learned from other co-workers that he had been called a "porch monkey," amongst other names.

58. Mr. Fair was born on September 30, 1959.

59. Defendants knew Mr. Fair's age, and that he had disabilities in the form of high blood pressure, high cholesterol, and a bad knee from a work-related injury.

60. Mr. Fair went to his manager's office on one occasion to tell them he had left his medication at home. Defendants, who were aware that Mr. Fair needed to take this

12

medication every day to treat his high blood pressure, did not permit him to go home to take it.

61.     Mr. Fair was ultimately fired by the same two Defendant managers under the pretext that he had allegedly "stolen time" because he did not punch out for lunch.

62.     Once Defendants terminated Mr. Fair, they replaced him with a much younger worker.

63.     Only the minority employees were so scrutinized, usually only minorities were accused of stealing time. Defendants accused, Mr. Fair, Mr. Gonzalez and Mr. Ferguson of stealing time. Accordingly, Defendants' rules were far more stringently applied to minorities than to non-minorities.

64.     Defendants additionally failed to pay Mr. Fair and Gonzalez for hours they had worked including their vacation pay. In actuality Mr. Fair did not receive a final check because Estes suddenly declared that he did not earn his pay.

65.     In fact, all Plaintiffs in this case were either not paid for any overtime hours worked or were not allowed to do any overtime, in fact Estes had a policy of not awarding overtime until the employee worked 55 Hours. Plaintiffs are of the belief that other similarly situated whites were not subjected to the same work overtime hours restrictions.

66.     Mr. Fair and co-party Mr. Jasper Lymon were falsely accused of spreading rumors that their supervisor was racist, therefore explaining why Defendants retaliated against these plaintiffs.

67.     Plaintiff Jasper Lymon is a member of the African American race.

68.     Until the NAACP sent a letter to Defendant Estes regarding the employment issues detailed in this complaint, Mr. Lymon remained employed by Defendant.

13

69.    In September, 2009, upon receipt of and in retaliation for said letter, Defendant Estes summarily fired Mr. Lymons.  (See Exhibit A, attached herein.)

70.    While employed by Defendant Estes, Mr. Lymon also had been subjected to belittling, disparate, racially discriminatory treatment by his supervisors.

71.    Mr. Lymon was suspended for incidents for which he maintains he was innocent, which his managers knew or would have discovered if they had properly investigated.

72.    Defendants were intent on discriminating against Mr. Lymon because they summarily punished him while failing to thoroughly investigate any accusations of misconduct leveled against him.

73.    Mr. Lymon has also been directly over-scrutinized by his supervisors who he has indirectly learned have referred to him in racially derogatory terms.

74.    Unlike other similarly situated non-minority employees, up until his ultimate termination, Mr. Lymon was been belittled, demeaned and made to feel like his continued employment with Defendant was constantly in jeopardy. In fact he had been written up for termination.

75.    Mr. Lymon contends that only he, Mr. Fair and Mr. Gonzalez or other minorities have been treated in this harsh, punitive manner, because other similarly situated white employees who have been provably guilty of greater misconduct were not even reprimanded for their behavior.

76.    Most of the plaintiffs complained was referred and plaintiff as instructed lodged their complaints with Rene Bloom, Defendant Estes' Human Resource Manager, located in Edison, New Jersey.

14

77.     Instead of conducting an investigation and/or implementing prophylactic measures to prevent against further harm to Plaintiffs, Defendants have to date summarily terminated each Plaintiff under one pretext or another.

## COUNT I: PREVENTION OF RIGHT TO ORGANIZE

78.     Plaintiffs hereby incorporate by reference the allegations contained in the Parties Paragraphs 1 through 77, as though each was fully set forth at length herein.

79.     The New Jersey State Constitution, Article I, Paragraph 19 states in relevant part that "Persons in private employment shall have the right to organize and bargain collectively. Persons in public employment shall have the right to organize, present to and make known to the State, or any of its political subdivisions or agencies, their grievances and proposals through representatives of their own choosing." The New Jersey Law is based upon the federal National Labor Relations Act, and expands upon its guarantee to American, private sector workers the right to organize and engage in collective bargaining, rights which have been deeply entrenched in our State and Federal history since 1935.

80.     Plaintiffs Andre Wise and Jasper Lymon, based upon their race and ethnicity, were prevented from exercising their New Jersey State right to unionize as laborers, guaranteed by the New Jersey State Constitution, Article I, Paragraph 19.

81.     Defendant Estes therefore violated Plaintiffs' rights to organize as laborers in order to protect their rights and interests as employees.

**WHEREFORE**, Plaintiffs pray for;

That the Defendant immediately reinstates Plaintiffs to their previous positions and statuses with no loss of seniority benefits and/or pay.

15

That the Plaintiffs each are awarded $1,000,000.00 in compensatory damages and that Plaintiffs also be awarded all back pay from their dates of termination, and front pay and interest.

Those Plaintiffs each are awarded punitive damages and all other damages including treble damages and attorneys fees.

For all cost and legal fees, interest, and treble damages if applicable.

For such legal and equitable relief that the court feels is just and proper.

## COUNT II: HOSTILE WORK ENVIRONMENT.

82.  Plaintiffs hereby incorporate by reference the allegations contained in the Parties Paragraphs 1 through 77 and Count I, as though each was fully set forth at length herein.

83.  Plaintiffs, based upon their race and ethnicity, were treated differently, belittled and made to suffer harassing treatment, embarrassment and severe humiliation at the hands of the Defendant, Estes, its supervisors, and in particular, Defendants Warren Harzer, Jay Schmidt, Brett Coyle and Frank Avignone.

84.  Defendants caused, condoned, ratified, aided and abetted acts in which Plaintiffs were demeaned, belittled, forced to endure severe and pervasive bigoted slurs and acts, continually made to feel like their jobs were in jeopardy, were wrongfully accused, based upon their race, of acts they did not commit, resulting in unfit punishments and were retaliated against by Defendants for instances where they attempted to alert upper management of the discrimination and harassment.

85.  Plaintiffs made requests for intervention from upper management in resolving the harassing treatment continually experienced at the hands of Defendants Warren Harzer, Jay Schmidt, Brett Coyle and Frank Avignone, but to no avail.  Instead, Defendants intentionally

#0505 P.017 / 038          01/09/2007 02:34

acquiesced, ratified, aided and abetted the prohibited conduct in complete disregard for

Plaintiffs' rights.

86.     These discriminatory and harassing acts were continuous and pervasive in nature,

changing the conditions of Plaintiff's employment, whereby they were uncomfortable,

nervous and feared for their jobs.

87.     Plaintiffs filed complaints asking for assistance from upper management,

requesting that this conduct be proscribed.  However, Defendants did nothing to alleviate

Plaintiffs' work conditions and the hostility and discriminatory treatment continued.

Plaintiffs believe that but for their race and ethnicity, Defendants would not have created,

ratified, aided, abetted and tolerated such adverse working conditions.

**WHEREFORE**, Plaintiffs pray for;

That the Defendant immediately reinstates Plaintiffs to their previous positions and

statuses with no loss of seniority, benefits and/or pay.

That the Plaintiffs each are awarded $1,000,000.00 in compensatory damages and that

Plaintiffs also be awarded all back pay from their dates of termination, and front pay and interest.

That Plaintiffs each are awarded punitive damages and all other damages including treble

damages and attorneys fees.

For all cost and legal fees, interest, and treble damages if applicable.

For such legal and equitable relief that the court feels is just and proper.

## COUNT III:  RACIAL DISCRIMINATION

88.    Plaintiffs hereby incorporate by reference the allegations contained in the Parties Paragraphs 1 through 77 and Counts I and II, as though each was fully set forth at length herein.

89.    Plaintiffs believe Defendants would not have continually subjected them to disparate and demeaning treatment but for their race and ethnicity, including accusing them of a violations they had not committed and imposing harsher punishments on them for minor or uncommitted offenses while Defendants protected other non-minority employees who actually did commit similar or more serious offenses than those allegedly committed by Plaintiffs. Defendants suspended Plaintiffs for violations they had not committed, without pay and without allowing the use of accumulated sick, vacation or float holiday time, ultimately terminating all Plaintiffs.  Plaintiffs, based on information provided, believe that but for their race and ethnicity, the Defendants would not have suspended and ultimately terminated them.

90.    Plaintiffs, based upon their race and ethnicity, were treated differently, belittled and made to suffer harassing treatment, embarrassment and severe humiliation at the hands of Defendant Estes in particular, its supervisors, Defendants Warren Harzer, Jay Schmidt, Brett Coyle and Frank Avignon.

91.    Plaintiffs believe, but for their race and ethnicity, they would not have been accused of the acts that were used as pretext for discriminatory terminations.

92.    Plaintiffs were wrongfully accused, based upon their race and ethnicity, of committing rule violations and spreading rumors about supervisors without investigation, causing Plaintiffs to suffer extreme emotional distress.  Plaintiffs were made the subject of perverse and severe changes of Plaintiff's employment.  Plaintiffs believe that but for their

18

race and ethnicity, they would not have been made the source of severe embarrassment, degradation and humiliation.

93.   Plaintiffs made requests for intervention from upper management in resolving the harassing treatment continually experienced at the hands of Defendants. Plaintiffs believe, but for their race and ethnicity, upper management would not have continually ignored in their requests for assistance in resolving on-the-job problems.

94.   Plaintiffs believe they would not have been forced to file any formal complaints on or about supervisor discrimination or co-worker harassment with upper management for the worsening mistreatment, or seek out legal counsel to help protect their rights, but for their race.

95.   Plaintiffs believe they would not have been continually retaliated against by Defendant Estes' agents, suspended and then terminated, but for their race and ethnicity.

96.   Plaintiffs believe that but for their race and ethnicity, with respect to each set of allegations and to each Plaintiff's individual grievances, full, complete and proper investigations of all the facts would have been conducted by upper management. Plaintiffs suffered job-related stress, both prior to and after termination of his employment.

97.   Plaintiffs have been emotionally damaged by Defendants' conduct. Plaintiffs believe that race was the motivating factor in the acts committed against them, including preventing them from exercising their rights under the company's sick leave policy.

**WHEREFORE**, Plaintiffs pray for;

That the Defendants immediately reinstate Plaintiffs to their previous positions and statuses with no loss of seniority, benefits and/or pay.

That the Plaintiffs each are awarded $1,000,000.00 in compensatory damages and that Plaintiff be awarded all back pay from their dates of termination, and front pay and interest.

That all misconception regarding any and all medical care of Plaintiffs Andre Wise and Erick Gonzalez be corrected to remove any and all liability on the part of Plaintiff.

That Plaintiffs are each awarded punitive damages and all other damages including treble damages and attorneys fees.

For all cost and legal fees, interest, and treble damages if applicable.

For such legal and equitable relief that the court feels is just and proper.

## COUNT IV:  RACIAL HARASSMENT

98.      Plaintiffs hereby incorporate by reference the allegations contained in the Parties Paragraphs 1 through 77 and Counts I through III, as though each was fully set forth at length herein.

99.      Plaintiffs on information believe, but for their race and ethnicity, the Defendants would not have continually subjected them to disparate and demeaning treatment based upon their race, racial and ethnic slurs, and derogatory comments about their race and ethnicity.

100.      Plaintiffs on information believe, but for their race and ethnicity, the Defendants would not have accused them of and punished them for violations they did not commit, while Defendants simultaneously protected other non-minority employees who were provably guilty of far worse conduct that the conduct of which Plaintiffs had been falsely accused.

101.      Defendants caused, condoned, ratified, aided and abetted acts in which Plaintiffs were demeaned, belittled, forced to endure severe and pervasive bigoted slurs and acts,

#0505 P.021 / 038                                                                01/09/2007  02:35

continually made to feel like their jobs were in jeopardy, were wrongfully accused, based upon their race, of acts they did not commit, resulting in unfit punishments and were retaliated against by Defendants for instances where they attempted to alert upper management of the discrimination and harassment.

102.   Plaintiffs have been emotionally damaged by Defendant's conduct.

**WHEREFORE**, Plaintiffs pray for;

That the Defendant immediately reinstates Plaintiffs to their previous positions and statuses with no loss of seniority, benefits and/or pay.

That the Plaintiffs each are awarded $1,000,000.00 in compensatory damages and that Plaintiff also be awarded all back pay from their date of termination, and front pay and interest.

That Plaintiffs each are awarded punitive damages and all other damages including treble damages and attorneys fees.

For all cost and legal fees, interest, and treble damages if applicable.

For such legal and equitable relief that the court feels is just and proper.


## COUNT V: EQUAL PROTECTION UNDER THE NEW JERSEY CONSTITUTION


103.   Plaintiff hereby incorporates, by reference, the allegations contained in the Parties Paragraph1 through 77 and Counts 1 through IV, as though each was fully set forth at length herein.

104.   Pursuant to Article I, Section 1 of the New Jersey Constitution, "All persons by nature are free and independent, and have certain natural and unalienable rights, among

21

which are those of enjoying and defendant life liberty, of acquiring, possessing and protecting, and pursing safety and happiness."

105.    Pursuant to Article I, Section 5 of the New Jersey Constitution, "No person shall be denied the enjoyment of any civil or military right, nor be discriminated against in the exercise of any civil or military right...... because of religious principles, race, color, ancestry or national origin."

106.    Defendants prevented Plaintiffs of the enjoyment of all benefits, privileges, terms and conditions of their employment. Defendants caused, condoned, ratified, aided and abetted acts in which Plaintiffs were demeaned, belittled, forced to endure severe and pervasive bigoted slurs and acts, continually made to feel like their jobs were in jeopardy, were wrongfully accused, based upon their race, of acts they did not commit, resulting in unfit punishments and were retaliated against by Defendants for instances where they attempted to alert upper management of the discrimination and harassment.

107.    The aforementioned discriminatory acts and conditions imposed on Plaintiffs are a direct result of Plaintiffs' race.

108.    Defendants' disparate treatment of Plaintiffs violated Plaintiffs "right to equal protection under the law" as guaranteed by the Constitution of New Jersey.

109.    As a direct and proximate result of said acts, Plaintiff has suffered grave, serious and continuing injury.

110.    Plaintiffs have been emotionally damaged by Defendants' conduct.

111.    Plaintiffs believe similarly situated white employees were not treated the same or subject to investigation.

112.    Defendant did intentionally and wrongfully terminate Plaintiffs.

113.    Defendants intentionally acted to deprive Plaintiffs of their livelihood. Defendants made Plaintiffs' employment uncomfortable and created an atmosphere where they were uncomfortable, thereby creating a work environment not conducive to their success in the workplace. Defendants thus deprived Plaintiffs of the enjoyment of all benefits, privileges, terms and conditions of their employment.

114.    The reasons stated for Plaintiffs' terminations are without merit and cannot be substantiated by Defendants. The reasons given by Defendants for Plaintiffs' terminations were a pretext for the real reasons, one of which is Plaintiffs' race amd ethnicity.  As a further direct and proximate result of Defendants' terminations of Plaintiffs, Plaintiffs have been deprived of income and wages, union benefits, medical benefits and valuable pension benefits.

115.    As a further result of Defendants' terminations of Plaintiffs, Plaintiffs have suffered severe humiliation, embarrassment and emotional distress.

116.    Plaintiffs have suffered and will continue to suffer injuries as a result of Defendants' wrongful and discriminatory acts.

117.    Plaintiffs have been emotionally damaged by Defendant's conduct.

**WHEREFORE**, Plaintiffs pray for;

That the Defendant immediately reinstates Plaintiffs to their previous positions and statuses with no loss of seniority, benefits and/or pay.

That the Plaintiffs each are awarded $1,000,000.00 in compensatory damages and that Plaintiffs be awarded all back pay from their date of termination, and front pay and interest.

That Plaintiffs each are awarded punitive damages and all other damages including treble damages and attorneys fees.

For all cost and legal fees, interest, and treble damages if applicable.

For such legal and equitable relief that the court feels is just and proper.

## COUNT VI: RETALIATION

118.    Plaintiffs hereby incorporate by reference the allegations contained in the Parties Paragraph 1 through 77 and Counts I through V, as though each was fully set forth at length herein.

119.    Defendants Warren Harzer and Jay Schmidt were Plaintiff Andre Wise's supervisors.

120.    Subsequent Mr. Wise's work-related injury in November, 2008, and his reports of discriminatory and abusive treatment to upper management, his managers, Defendants Warren Harzer and Jay Schmidt, determined to use the accident as an excuse to terminate him for lodging formal complaints with Rene Bloom and based upon his race.

121.    As a cruel and racially motivated form of retaliation, Mr. Wise was also subjected to a random drug test while he was being treated for said work-related injury by Defendant Estes' appointed physician, prior to ultimately being terminated by Defendants.

122.    Mr. Fair and Mr. Gonzalez was ultimately fired by the same two Defendant managers, Frank Avignone and Brett Coyle, under the pretext that he had allegedly "stolen time" because they did not punch out for lunch.  Furthermore, Mr. Fair and co-plaintiff Jasper Lymon were falsely accused of spreading rumors that their supervisor was racist, resulting in what Plaintiffs contend was a retaliatory termination on the part of Defendants.

24

123.   Both Mr. Fair and Gonzalez complained to their manager about what they perceived to be discrimination. Mr. Fair referred to the "'P' word," indicating his concern that "prejudice" had been taking place. His manager then proceeded to complain about this complaint of prejudice to Defendants, who determined they would terminate Plaintiffs for lodging the complaint.

124.   Mr. Lymon, furthermore, was the only plaintiff to this case who remained employed by Defendant at the time during which Plaintiffs sought legal counsel. Once the NAACP sent a letter to Defendant Estes regarding the employment issues detailed above, Defendants summarily Mr. Lymon in what was an obvious act of retaliation for exercising his legal rights.

125.   While employed by Defendant Estes, Mr. Lymon also had been subjected to belittling, disparate, racially discriminatory treatment by his supervisors.

126.   Mr. Gonzalez made a direct complaint to Renee bloom and to the headquarters in Virginia. He was also was very verbal about the discriminatory statement made by his supervisors.

127.   Instead of correcting any of the problems detailed in Plaintiffs' formal reports to upper management regarding Defendant Estes' harsh and discriminatory work environment, Defendants determined that they would retaliate against Plaintiffs in violation of New Jersey Law Against Discrimination.

128.   As a direct and proximate result of Defendants' termination of Plaintiffs, Plaintiffs were deprived of their employment and equal employment opportunities.

129.   As a further direct and proximate result of Defendants' terminations of Plaintiffs, Plaintiffs have been deprived of income and wages, and have been deprived of valuable

#0505 P.026 / 038                                                                01/09/2007   02:36

and bonus earnings.

pension benefits. Plaintiffs have also lost payment of unused personal days, health benefits and bonus earnings.

130. As a further result of Defendants' terminations of Plaintiffs, Plaintiffs have suffered severe humiliation, embarrassment and emotional distress.

131. Plaintiff has suffered and will continue to suffer injuries as a result of Defendant's wrongful and discriminatory acts.

132. The discriminatory actions of Defendants, as set forth above, were willful, malicious, intentional and were carried out by Defendants with knowledge of their illegality.

133. The discriminatory and illegal acts of Defendants, as set forth above, offended, humiliated and tended to degrade Plaintiffs, to their damage.

134. Plaintiffs have been emotionally damaged by Defendant's conduct.

135. As a direct and proximate result of said acts, Plaintiffs have suffered serious and continuing economic and emotional injury.

**WHEREFORE**, Plaintiffs prays for;

That the Defendant immediately reinstates Plaintiffs to their previous positions and statuses with no loss of seniority, benefits and/or pay.

That the Plaintiffs each are awarded $1,000,000.00 in compensatory damages and that Plaintiffs also be awarded all back pay from their dates of termination, and front pay and interest.

That Plaintiffs are each awarded punitive damages and all other damages including treble damages and attorneys fees.

For all cost and legal fees, interest, and treble damages if applicable.

For such legal and equitable relief that the court feels is just and proper.

#0505 P.027 / 038                                                01/09/2007 02:36

## COUNT VII: DISCRIMINATION UNDER, 42 U.S.C. 1981

136.    Plaintiffs hereby incorporate by reference the allegations contained in the Parties and paragraphs 1 through 77 and Counts I through VI as though each was fully set forth at length herein.

137.    The Civil Rights Act of 1866, as amended, 42 U.S.C. 1981 prohibits discrimination on the basis of race in the "making, performance, modification and termination of contractors, including the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

138.    Defendants caused, condoned, ratified, aided and abetted acts in which Plaintiffs were demeaned, belittled, forced to endure severe and pervasive bigoted slurs and acts, continually made to feel like their jobs were in jeopardy, were wrongfully accused, based upon their race, of acts they did not commit, resulting in unfit punishments and were retaliated against by Defendants for instances where they attempted to alert upper management of the discrimination and harassment.

139.    In contravention of this Act and in violation of Congress' intent to eradicate this form of conduct from work environments, Defendants, on the basis of race, have discriminated against Plaintiffs and deprived them of their right to perform according to their employment contracts and receive the due benefits of their employment. Defendants were motivated by bias against Plaintiffs, as evidenced by Defendants' racial slurs, demeaning behavior and unjustified, adverse employment actions.

140.    As a direct and proximate result of said acts, Plaintiffs have suffered serious and continuing economic and emotional injury.

**WHEREFORE**, on this count, plaintiffs pray that the court enter judgment, issue injunctive and compensatory and punitive relief and afford such other relief, as may be appropriate including attorney's fees and costs and any other fees which justice requires.

## COUNT VIII: DISCRIMINATION IN PUBLIC ACCOMODATION UNDER NJ STAT. 10:5-1-4

141.    Plaintiffs hereby incorporate by reference the allegations contained in the Parties and paragraphs 1 through 77 and Counts I through VII as though each was fully set forth at length herein.

142.    NJ STAT. 10:5-1-4, commonly referred to as the New Jersey Law Against Discrimination (LAD), protects employees with existing disabilities, as well as employees who have had a disability in the past or employees who are treated as if they have a disability. Pursuant to the LAD, employers must take reasonable steps to make the employment opportunities, facilities, or services that they offer to the general public available to employees with disabilities, unless it would cause the employer undue hardship to accommodate the needs of an employee with a disability. An employee with a disability cannot be denied employment, unless the disability prevents his or her performance of essential job duties or would probably cause serious harm to him or her or to others.

143.    Defendant Estes was aware of the accident that Plaintiff Andre Wise suffered on the job, causing him a disabling injury.

144.    Defendant Estes, fully aware of Mr. Wise's disability, stemming from the on-the-job injury, failed to reasonably accommodate him and instead summarily terminated his job, contrary to the treatment of most similarly situated, white employees.

28

145.    Defendant Estes was aware of the accident that Plaintiff Erick Gonzalez suffered on the job, causing him a disabling injury.

146.    Defendant Estes, fully aware of Mr. Gonzalez' disability stemming from an on-the-job injury, failed to reasonably accommodate him and instead summarily terminated his job, contrary to the treatment of most similarly situated, white employees.

147.    Defendant Estes was aware that Plaintiff Thomas Ferguson is a diabetic, which fits within the definition of "disability" for purposes of LAD protection.

148.    Defendant Estes, fully aware of Mr. Ferguson's disability stemming from being diabetic, failed to reasonably accommodate him by affording him proper break times and instead summarily terminated his job, contrary to the treatment of most similarly situated, white employees.

149.    Defendant therefore violated Plaintiffs' rights to enjoy or obtain all the advantages and privileges and accommodations of public accommodation under the New Jersey Law Against Discrimination.  By refusing to reasonably accommodate Plaintiffs' disabilities, which Defendants could easily have done, Defendants violated Plaintiffs' civil rights.

150.    As a direct and proximate result of said acts, plaintiffs have suffered serious economic loss, emotional trauma, physical and emotional stress and continuing injury.

WHEREFORE, on this count, plaintiffs pray that the court enter judgment, issue injunctive and compensatory and punitive relief and afford such other relief, as may be appropriate including attorney's fees and costs and any other fees which justice requires.

## COUNT IX: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

151. Plaintiffs hereby incorporate by reference the allegations contained in the Parties and paragraphs 1 through 77 and Counts I through VIII as though each was fully set forth at length herein.

152. Intentional infliction of emotional distress requires outrageous conduct by a defendant, the defendant's intention of causing or reckless disregard of the probability of causing emotional distress, the plaintiff's suffering severe or extreme emotional distress, and actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

153. Defendants caused, condoned, ratified, aided and abetted acts in which Plaintiffs were demeaned, belittled, forced to endure severe and pervasive bigoted slurs and acts, continually made to feel like their jobs were in jeopardy, were wrongfully accused, based upon their race, of acts they did not commit, resulting in unfit punishments, and were retaliated against by Defendants for occasions where they attempted to alert upper management of the discrimination and harassment. This same conduct continued even after Plaintiffs lodged their formal complaints. The derogatory and demeaning statements, slurs and bigoted acts were committed against Plaintiffs even after Defendants knew it was painful and emotionally damaging to the Plaintiffs.

154. All of Defendants' willfully hostile and discriminatory treatment, as detailed herein, was extreme and outrageous conduct which went beyond all possible bounds of decency so as to be atrocious and utterly intolerable in a civilized community. The cruelty, hostility and stressfulness of said conduct would have caused an average member of the community to suffer severe emotional distress.

#0505 P.031 /038      01/09/2007 02:37

155.    The result of Defendants' conduct was to cause Plaintiffs to suffer extreme emotional anxiety and distress.

156.    Defendants therefore intentionally, actually and proximately caused Plaintiffs to suffer extreme emotional distress despite complaints and reports made to upper management.

**WHEREFORE**, on this count, plaintiffs pray that the court enter judgment, issue injunctive and compensatory and punitive relief and afford such other relief, as may be appropriate including attorney's fees and costs and any other fees which justice requires.

## COUNT X: AGE DISCRIMINATION UNDER NJ STAT. 10:5-1-4

157.    Plaintiffs hereby incorporate by reference the allegations contained in the Parties and paragraphs 1 through 77 and Counts I through IX as though each was fully set forth at length herein.

158.    The New Jersey Law Against Discrimination (LAD) prohibits employers from discriminating in any job-related action, including recruitment, interviewing, hiring, promotions, discharge, compensation and the terms, conditions and privileges of employment on the basis of any of the law's specified protected categories, including age. The LAD prohibits intentional discrimination based on this characteristic. Intentional discrimination may take the form of differential treatment or statements and conduct that reflect discriminatory animus or bias.

159.    Plaintiff Sylvester Fair, who is fifty years old, went to his manager's office on one occasion to report that he had left his blood pressure medication at home. Defendants, who were aware that Mr. Fair needed to take this medication every day to treat his high blood

31

pressure, did not permit him to go home to take it. Following this event, Mr. Fair was treated differently and disparately, and was ultimately fired by the same two Defendant managers under the pretext that he had allegedly "stolen time" because he did not punch out for lunch. Once Defendants terminated Mr. Fair, they replaced him with a much younger worker.

160.    Plaintiff Fair believes that Defendants' termination decision was in part based on his age, or his employers' perception of him as too old to carry out his duties, despite the fact that he had always performed his job at or above-average in accordance with his employer's reasonable expectations. The aspect of age discrimination is evidenced by the fact that Mr. Fair was terminated without just cause and immediately replaced with a much younger individual.

161.    Defendants therefore intentionally, actually and proximately fired Mr. Fair in part due to a perceived disability based on his age.

162.    Defendant's disparate treatment of Plaintiffs Lymon and Fair violated Plaintiffs' right to be free from discrimination on the basis of age under the law, as guaranteed by the New Jersey Law Against Discrimination.

163.    As a direct and proximate result of said acts, Plaintiffs have suffered grave, serious and continuing injury.

**WHEREFORE,** on this count, plaintiffs pray that the court enter judgment, issue injunctive and compensatory and punitive relief and afford such other relief, as may be appropriate including attorney's fees and costs and any other fees which justice requires.

32

Sterling Law Firm, L.L.C.

Attorneys for Plaintiff

BY:

_____

Yvette C. Sterling

DATED: November 13, 2009

33

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues.

_____
Yvette C. Sterling

DATED: November 13, 2009

#0505 P.035 / 038

01/09/2007 02:38

## DESIGNATION OF TRIAL COUNSEL

Yvette C. Sterling, Esq. is designated as trial counsel in this matter.

_____
Yvette C. Sterling

DATED: November 13, 2009

## DEMAND FOR PRODUCTION OF INSURANCE AGREEMENTS

Pursuant to R. 4:10-2(b), demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the judgment.   If so, please attach a copy of each, or in the alternative state, under oath and certification:  (a) policy number; (b) name and address of insurer; (c) inception and expiration date; (d) names and addresses of all persons insured thereunder; (e) personal injury limits; (f) property damage limits; and (g) medical payment limits.

_____
Yvette C. Sterling

DATED: November 13, 2009

## CERTIFICATION PURSUANT TO R. 4:5-1

I certify that the matters in controversy in this action are not the subject of any other action pending in any other court or of a pending arbitration proceeding, and that no other action or arbitration proceeding is contemplated.

_____
Yvette C. Sterling

DATED: November 13, 2009

36

## VERIFICATION

We, ANDRE WISE, ERICK GONZALEZ, THOMAS FERGUSON, SYLVESTER FAIR, JASPER LYMON AND THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, METUCHEN-EDISON BRANCH, Plaintiffs, certify that the above statements made are true. Should they prove to be willfully false, we, Plaintiffs, are subject to punishment.

Dated _____ Day of _____, 2009

_____

Andre Wise

_____

Erick Gonzalez

_____

Thomas Ferguson

_____

Sylvester Fair

_____

Jasper Lymon

_____