NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDRE WISE, et al., | |
| Plaintiffs, | OPINION |
| v. | |
| ROBERT ESTES, JR., in his personal and business capacity, et al., | Civil Action No.: 10-481 (JLL) |
| Defendants. | |

**LINARES**, District Judge.

This matter comes before the Court on (1) a motion to dismiss Plaintiffs' First Amended Complaint filed by Defendants, (2) a motion to remand to state court filed by Plaintiffs, and (3) a motion to amend the complaint filed by Plaintiffs. Plaintiffs' First Amended Complaint appears to bring a state law claim for intentional infliction of emotional distress as well as various claims pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981, various claims pursuant to New Jersey's Law Against Discrimination ("NJLAD"), and various claims based on the New Jersey Constitution.[1]  The Court has considered the submissions in support of and in opposition to the motions and decides the matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure.  For the reasons discussed below, (1) Plaintiffs' motion to remand is denied; (2) Defendants' motion to dismiss is granted in part and denied in part, and (3) Plaintiffs' motion to amend the complaint is granted, but the proposed amendment is not accepted for filing.

---

[1] The First Amended Complaint is unclear which laws are alleged to be violated for certain claims.  However, the claims are clarified in the proposed amendment submitted with Plaintiffs' motion to amend the complaint.  Therefore, the Court construes the claims asserted in the First Amended Complaint in light of the later clarification.

I.     BACKGROUND[2]

Plaintiffs were employed by Defendant Estes as dock workers or, in the case of Mr. Ferguson, as a truck driver.  (Am. Compl. ¶ 5.)  Plaintiffs Wise, Ferguson, Fair and Lymon are African American.  (Id., at ¶ 19, 45, 55, 67.)  Plaintiff Gonzales is Hispanic of Puerto Rican heritage.  (Id., at ¶ 26.) Plaintiffs assert that the "discrimination and harassment [at issue] began when Defendants Avignone and Coyle became their supervisors and determined that they would intentionally discriminate against Plaintiffs or act adversely towards Plaintiffs with the primary motive being Plaintiffs' race and/or ethnicity."  (Id., at ¶ 12.)

Plaintiff Wise

Mr. Wise, asserts that he worked for Defendant Estes for twelve years "without any major incident."  (Id., at ¶ 19.)  Late in 2007, however, Mr. Wise was injured in an accident on the job.  (Id., at ¶ 20.)  Mr. Wise asserts that "[s]ubsequent to this event, [his] managers, Defendants Warren Harzer and Jay Schmidt, who had been the main actors acting illegitimately against Mr. Wise all along, determined to use the November, 2007 accident as an excuse to terminate him."  (Id., at ¶ 21.)  Mr. Wise also asserts that, after the accident, he was subjected to random drug testing that "many white employees" in similar situations were not subject to.  (Id., at ¶ 22-24.)

Plaintiff Gonzales

Mr. Gonzales was injured on the job in December 2008.  (Id., at ¶ 27.)  He alleges that, on December 22, 2008, in response to his injury "he was called a 'lying scum bag' and that he [was told that] he 'just wanted to get over' as that is 'his Puerto Rican Nature.'"  (Id., at ¶ 31.)

---

[2] In this Opinion, the Court does not reach the merits of Defendants' arguments regarding Plaintiffs' state law causes of action.  Therefore, the Court limits the factual background to those facts relevant to Plaintiffs' federal discrimination, hostile work environment, and retaliation claims.

Mr. Gonzales also asserts that he "was subjected to several discriminatory acts and/or slurs that caused him extreme emotional anxiety and pain." (Id., at ¶ 29.) For example, on December 9, 2008, he alleges that he "was told [by his managers] 'how lucky' he was to be 'going to Puerto Rico to eat rice and beans." (Id., at ¶ 30.) He also alleges that he "has been called 'stupid' and a 'mental midget' by his manager" as well as "a 'wigger,' a 'Mary' and a 'Dark meat lover.'" (Id., at ¶ 32, 34.) He alleges that his manager, Mr. Coyle, told Mr. Schmidt "that nothing good comes from Puerto Rico, especially the people." (Id., at ¶ 33.) He alleges that he also heard "derogatory racial slurs being used against other co-workers who were friends and about Government officials who were minorities." (Id., at ¶ 41.) For example, he alleges that he "heard one of his managers, Frank Avignone, state . . . 'that Sly and Jasper were some porch monkeys for talking'" and "that 'Sly didn't want to do a double shift Christmas week so he can drink Colt 45.'" (Id., at ¶ 43.) He also asserts that Defendants "requested that he unjustly write up minority employees working under him for non-existent wrongs." (Id., at ¶ 11.) In response to this treatment, Mr. Gonzales alleges that he called human resources "to formally lodge a complaint." (Id., at ¶ 35.) He alleges that "[i]n retaliation for his report, Defendant Brett Coyle . . . told him that no job was available due to his disability[;] [d]espite the fact that [he] was awarded light duty by the doctor." (Id., at ¶ 38.) He was "summarily fired on January 19, 2009." (Id., ¶ 27.) He asserts that the excuse for his termination was "a pretext for the real reason, which was intentional discrimination." (Id., at ¶ 44.)

Plaintiff Ferguson

"Mr. Ferguson is a diabetic and alleges that Estes knew of his disability but willfully ignored it rather than reasonably accommodating him." (Id., at ¶ 47.) Mr. Ferguson alleges that "Estes had a history of treating Minority bus drivers differently than other whites." (Id., at ¶ 49.)

For example, he alleges that he was not permitted to punch in until his truck was ready to go whereas non-minorities could punch in earlier.  (Id.)  He also alleges that he and "Mr. Fair and Mr. Gonzales were not given the same break time as similarly situated white employees."  (Id., at ¶ 50.)  Mr. Ferguson alleges that, "[a]fter the defendants Avignon and Coyle became their supervisors, Plaintiffs were subjected to belittling, race-biased treatment."  (Id., at ¶ 53.)  Mr. Ferguson was ultimately fired for allegedly sleeping on the job.  (Id., at ¶ 54.)  He "believes based on the conduct of defendants that the rational[e] given for his termination was a pretext for the real reason, which was intentional racial discrimination."  (Id.)

Mr. Fair

Mr. Fair alleges that "[i]n addition to direct harassment, [he] learned from other co-workers that he had been called a 'porch monkey,' amongst other names."  (Id., at ¶ 57.)  He also alleges that "Defendants knew [his] age, and that he had disabilities in the form of high blood pressure, high cholesterol, and a bad knee."  (Id., at ¶ 59.)  Mr. Fair was fired for allegedly stealing time.  (Id., at ¶ 61.)  He alleges that "usually only minorities were accused of stealing time."  (Id., at ¶ 63.)  He asserts that Defendants "replaced him with a much younger worker."  (Id., at ¶ 62.)

Defendant Lymon

Mr. Lymon alleges that "[w]hile employed by Defendant Estes, [he] also had been subjected to belittling, disparate, racially discriminatory treatment by his supervisors."  (Id., at ¶ 70.)  He alleges that he "has also been directly over-scrutinized by his supervisors who he has indirectly learned have referred to him in racially derogatory terms."  (Id., at ¶ 73.)  He states that he "was . . . belittled, demeaned and made to feel like his continued employment with Defendant was constantly in jeopardy."  (Id., at ¶ 74.)  He asserts "that only he Mr. Fair, and Mr.

Gonzales or other minorities [were] treated in this harsh, punitive manner, because other similarly situated white employees who have been proven guilty of greater misconduct were not even reprimanded for their behavior." (Id., at ¶ 75.) "Mr. Lymon was suspended [and ultimately fired] for incidents for which he maintains he was innocent, which his managers knew or would have discovered if they had properly investigated." (Id., at ¶¶ 69, 71.)

All Plaintiffs allege that they were treated differently from other similarly situated white employees. They also allege that they all "were either not paid for any overtime hours or were not allowed to do any overtime" and "that similarly situated white were not subjected to the same work overtime hours restrictions." (Id., at ¶ 65.)

Defendants presently seek dismissal of all claims. After Defendants filed their motion to dismiss, Plaintiffs filed a motion to remand and a motion to amend the complaint. Defendants oppose both motions.

## II.   PLAINTIFFS' MOTION TO REMAND

Plaintiffs argue that remand is appropriate based on their "belief that the Federal Court has discretion to remand the case based upon 28 U.S.C. 1337 [sic] and also because the State Court has the right to hear federal questions that do not need any different interpretation since U.S.C.A. Section 1981 and the analysis under the [NJLAD] are one and the same." (Pls.' Mot. to Remand to State Court, at 2.[3]) A defendant may remove a plaintiff's state court action to federal district court if the plaintiff's action could have otherwise been commenced in federal court. See 28 U.S.C. § 1441(a). "[A]ll civil actions arising under the Constitution, laws, or treaties of the United States" may be commenced in federal court; federal courts have original

---

[3] Plaintiffs' motion to remand is not paginated. Therefore, the Court's page references are to the CM/ECF document page numbers.

jurisdiction over these matters.  Id., at § 1331.[4]  Contrary to Plaintiffs' belief, "[w]hen federal subject matter jurisdiction exists and the proper removal procedures are followed, removal is a privilege that the defendant (or defendants) may choose to exercise."  Thompson v. Mobile Comm'ns, No. 98-4691, 1999 U.S. Dist. LEXIS 5614, at *10 (D.N.J. Apr. 19, 1999); see also 28 U.S.C. § 1447; Bisbing v. N.J. Fireman's Home, No. 06-5304, 2007 U.S. Dist. LEXIS 1673, at *11-12 (D.N.J. Jan. 8, 2007) (stating that a district court cannot decline jurisdiction upon removal where the removed action raises a federal question).  A district court does have discretion to remand a matter if all of the federal claims have been dismissed and only state law claims remain.  See 28 U.S.C. § 1367(c).  Plaintiffs cite no law contrary to these general propositions.

Plaintiffs chose to assert federal claims against Defendants–claims for alleged violations of 42 U.S.C. § 1981.[5]  They acknowledge that they have asserted federal claims.  Nevertheless, they argue that, because state courts have concurrent jurisdiction over the claims, their forum choice should prevail.  This position is contrary to Defendants' right of removal, as discussed above.  See Bisbing, 2007 U.S. Dist. LEXIS 1673, at *10-11.  *Because Plaintiffs assert federal claims*, so long as Defendants follow the proper removal procedures, Defendants may remove the matter to federal court.  Plaintiffs do not argue that Defendants failed to follow the

---

[4] Neither party asserts that diversity jurisdiction exists in this case. The allegations in the Amended Complaint demonstrate that complete diversity does not exist.

[5] Plaintiffs' Amended Complaint states that they are bringing claims under "42 USC § 1981, commonly referred to as the Civil Rights Act of 1964."  (Am. Compl. ¶ 2.)  In other places in the Amended Complaint, they also refer to claims under the Civil Rights Act of 1964.  Section 1981 was enacted as part of the Civil Rights Act of 1866.  Therefore, it is unclear if the references to the Civil Rights Act of 1964 are meant to also assert Title VII claims.  Plaintiffs' briefs, in particular the motion to remand, lead the Court to believe that only § 1981 claims are asserted.  Therefore, the Court construes the Amended Complaint (and the proposed additional amendment, discussed below) as asserting federal claims based solely on § 1981.

procedural requirements of removal.  Therefore, removal was proper, and Plaintiffs' motion to remand on this ground is denied.

### III.    DEFENDANTS' MOTION TO DISMISS

#### A.    Legal Standard

For a complaint to survive dismissal under Rule 8, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully;" mere consistency with liability is insufficient.  Id.  In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.  See Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[;] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S. Ct. at 1949.  It is the underlying specific facts alleged in a complaint that should be treated as true and evaluated.

#### B.    Section 1981 Claims

Plaintiffs bring § 1981 claims for discrimination, hostile work environment, and retaliation.  "Ordinarily, to establish a basis for relief under section 1981 a plaintiff must show (1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in §

1981." Estate of Olivia v. N.J. Dep't of Law & Pub. Safety, 604 F.3d 788, 797 (3d Cir. 2010) (internal quotations omitted). Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). Additionally, § 1981 employment claims are analyzed using the same framework as for Title VII and NJLAD claims. See Estate of Olivia, 604 F.3d at 798 n.14; Jones v. School Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999); see also Kant v. Seton Hall Univ., 289 Fed. Appx. 564, 566 (3d Cir. 2008) (unpublished).

1. Discrimination

Plaintiffs' racial discrimination claims allege that they were treated differently than non-minorities and that they were terminated because of their race. In general, claims alleging disparate treatment require a plaintiff to show "that [he] was treated less favorably than similarly situated employees who are not in plaintiff's protected class." Doe v. C.A.R.S. Prot. Plus, 527 F.3d 358, 366 (3d Cir. 2008). To establish a claim for discriminatory discharge, a "plaintiff must demonstrate that he or she (1) belongs to a protected class; (2) . . . held a position for which he or she was objectively qualified; (3) . . . was terminated from that position; and (4) the employer sought to, or did[,] fill the position with a similarly-qualified person." Armstrong v. Burdette Tomlin Mem'l Hosp., 438 F.3d 240, 249 (3d Cir. 2006) (alteration in original) (quoting Gerety v. Atlantic City Hilton Casino Resort, 877 A.2d 1233, 1237 (N.J. 2005)).

Here, none of the plaintiffs, except for Mr. Fair, plead that their positions were filled by another person. In Mr. Fair's case, he alleges that Defendants "replaced him with a much younger worker." (Am. Compl. ¶ 62. He does not allege that the person was similarly-qualified,

and his allegation does not provide a factual basis for racial versus age discrimination. His and the other plaintiffs' allegations of discharge due to their race are made solely through conclusory statements and speculation of discrimination. Therefore, Plaintiffs' Amended Complaint fails to provide a sufficient factual basis for claims of discriminatory discharge.

With respect to their claims of disparate treatment in their employment, Plaintiffs all state that they were treated differently than similarly situated non-minorities. Mr. Wise asserts that he was required to undergo random drug testing and that "*many* white employees" were not so required. (Id., at ¶ 23 (emphasis added).) The implication from his allegation is that some similarly situated white employees were required to undergo drug testing. Mr. Gonzales alleges that Defendants requested that he "unjustly write up minority employees working under him for non-existent wrongs." (Id., at ¶ 11.) He does not allege that he or anyone else actually did so. Although, with other sufficient factual allegations, an inference could be drawn from this assertion that racial animus drove differential reprimands. Mr. Ferguson alleges that he was not allowed to punch in as early as non-minorities. He also alleges that he and other minorities were "not given the same break time as similarly white employees." (Id., at ¶¶ 49-50.) He does not provide any factual allegations regarding the alleged similarly situated person(s). Mr. Fair alleges that "*usually* only minorities were accused of stealing time." (Id., at ¶ 63 (emphasis added).) Like Mr. Wise's allegation, his allegation that usually minorities suffered different treatment fails to sufficiently plead that race, and not some other factor, motivated Defendants' alleged conduct. Finally, Mr. Lymon makes only broad conclusory statements that he and other minorities were more harshly reprimanded than non-minorities. Plaintiffs all assert that they were not permitted to work the same overtime employees as non-minorities. However, they provide no further details beyond this general accusation.

Some of the plaintiffs state that they suffered from some type of injury or disability and assert claims for failure to accommodate the alleged disabilities.  Also, at least one plaintiff, Mr. Fair, asserts that he was discriminated against based on his age.  Plaintiffs' general allegations of disparate treatment are insufficient to plead a plausible claim of differential treatment based on race as opposed to these other factors.  Plaintiffs must make clear allegations related to each type of alleged discrimination.  Incorporation of numerous, varied, general factual allegations into each cause of action rather than clearly identifying which allegations support each claim do not fairly put Defendants on notice of the claims asserted against them.  Plaintiffs' § 1981 disparate treatment claims are dismissed without prejudice.  Additionally, the Court has reviewed Plaintiffs' proposed amendment, and, although it provides some additional detail as to comparable similarly situated employees who were allegedly treated different, it still fails to allege that their work positions were filled by other persons.

     2.     Hostile Work Environment

To establish a cause of action based on a hostile work environment, a plaintiff must plead allegations to support "that the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive."  Shepherd v. Hunterdon Developmental Ctr., 803 A.2d 611, 625 (N.J. 2002).  In making this determination, a court must evaluate the totality of the situation, "includ[ing] the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).  But, "[t]he offensiveness of the individual actions complained of is also a factor to be considered in

determining whether such actions are pervasive." Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000). And, a plaintiff "cannot meet the first element of [a] hostile work environment claim . . . –causation–*solely* by pointing to comments that were directed at other individuals." Caver v. City of Trenton, 420 F.3d 243, 263 (3d Cir. 2005) (emphasis in original). Additionally, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (citation and internal quotations omitted); see also Tucker v. Merck & Co., 131 Fed. Appx. 852, 859 (3d Cir. 2005) (unpublished) (citing Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 482 (3d Cir. 1997)); Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) ("[I]nstead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments."); Elmahdi v. Marriott Hotel Svcs., Inc., 339 F.3d 645, 653 (8th Cir. 2003) (a case with allegations that the plaintiff was called 'boy' and 'black boy' on a few occasions over a period of years, which the court found not to "constitute a 'steady barrage of opprobrious racial comment' sufficient to support a § 1981 hostile work [environment] claim").

      Here, Plaintiffs provide no details of the frequency and duration of the alleged harassing conduct. It generally can be inferred from the Amended Complaint that the conduct began, at least for some of the plaintiffs, in late 2007, but the Amended Complaint fails to provide any further details from which this Court could evaluate whether Plaintiffs have sufficiently pled *pervasive* offensive conduct. Additionally, with the exception of Mr. Gonzales, no other plaintiff makes any allegations of specific comments directed at them personally. Most make only general allegations of belittling conduct. Finally, the Amended Complaint is not clear as to whether the comments complained of by each plaintiff were experienced by all. For example,

Mr. Ferguson is a truck driver, not a dock worker, like the other plaintiffs. It is unclear if the "environment" complained of is one shared by all Plaintiffs or if Plaintiffs are each alleging that their own separate working environments were hostile. For these reasons, the Court finds that Plaintiffs' primarily general and conclusory allegations are insufficient to state a hostile work environment claim; this § 1981 claim is also dismissed without prejudice.

The Court has reviewed the proposed amended complaint and finds that, while it adds substantial detail regarding the types of comments directed at Plaintiffs, it still fails to provide sufficient detail of the frequency and duration of the complained of conduct. Plaintiffs merely allege that the comments were made "very frequently" or "regularly." Such words are simply another way of generally asserting that the conduct was "pervasive." Plaintiffs do not allege any physically threatening conduct. They also allege many comments that, in isolation, are racially neutral. Thus, while the Court notes that some of the allegations clearly detail offensive comments, without additional allegations related to the frequency, duration, and scope of this conduct as it relates to the working environment of each Plaintiff, the proposed amendment fails to correct all of the deficiencies of the Amended Complaint as identified above.

    3.    <u>Retaliation</u>

To establish a prima facie case of retaliation under § 1981, a plaintiff must allege that "(1) he engaged in protected activity, (2) his employer took adverse employment action against him, and (3) there was a causal connection between his participation in the protected activity and the adverse employment action." <u>Estate of Olivia</u>, 604 F.3d at 798. As an initial matter, the Amended Complaint only alleges that Mr. Gonzales, Mr. Fair, and Mr. Lymon, through the NAACP, complained of the alleged racial discrimination and harassment. Thus, Mr. Wise and Mr. Ferguson do not appear to be asserting retaliation claims. More importantly, as this Court

has found that Plaintiffs have insufficiently pled discrimination and harassment claims, Plaintiffs have also insufficiently pled that they engaged in protected activity. Therefore, the § 1981 retaliation claims are also dismissed without prejudice.

### C.     State Law Claims

A district court

> may decline to exercise supplemental jurisdiction . . . if –
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The Court has dismissed all claims over which it has original jurisdiction. Therefore, the Court may decline to exercise supplemental jurisdiction over Plaintiffs' various state law claims. The Supreme Court has stated that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); see also Borough of T. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) (quoting and discussing Gibbs). This case is at the earliest stages of the proceedings, and Plaintiffs filed their action in state court and want their numerous state law claims to be heard in state court. Therefore, the Court declines to exercise supplemental jurisdiction if no federal claim is properly asserted. For this reason, the Court denies Defendants' motion to dismiss Plaintiffs' state law claims without prejudice to re-file their motion based on an amended complaint, if any. If Plaintiffs do not file an amendment curing the deficiencies in the federal claims, as discussed above, the Court will remand the remaining state law claims to the Superior Court of New Jersey.

**III.     PLAINTIFFS' MOTION TO AMEND THE COMPLAINT**

As noted above, the Court has dismissed Plaintiffs' § 1981 claims <u>without</u> prejudice. The Court will permit Plaintiffs an opportunity to amend the complaint to cure the deficiencies identified in this Opinion. But, the Court agrees with Defendants that amendments are not meant to be used as a work in process to constantly change the allegations in response to challenges by a defendant, especially where the amended allegations consist of facts previously available to, but unpled by, a plaintiff. However, as noted above, Plaintiffs' proposed amendment, while failing to cure all of the deficiencies in the federal claims, does add substantial new factual allegations. Therefore, Plaintiffs' motion to amend the complaint is granted. But, the Court does not accept the proposed amendment. Plaintiffs shall have fourteen (14) days to file a second amended complaint[6] curing all of the federal claim deficiencies; no further amendments of the federal claims will be permitted barely exceptional circumstances. If Plaintiffs fail to file an amended complaint, their § 1981 claims will be dismissed with prejudice.

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiffs' motion to remand is denied. Defendants' motion to dismiss Plaintiffs' Section 1981 claims are granted; these claims are dismissed without prejudice to Plaintiffs to amend the complaint to cure the deficiencies identified in this Opinion. Having dismissed the only federal claims, the Court declines to exercise supplemental jurisdiction over the state claims unless Plaintiffs sufficiently state a federal claim in an amended complaint. Finally, Plaintiffs' motion to amend the complaint is granted, but the Court does not accept the proposed amendment as it also contains deficiencies with respect to Plaintiffs' federal claims.

---

[6] Plaintiffs labeled the proposed amendment: "Third Amended Complaint." They state that they have filed a Second Amended Complaint with the state court. Defendants' removal divested the state court of jurisdiction over the matter. Therefore, the Court is granting Plaintiffs permission to file a Second Amended Complaint in this matter.

Plaintiffs shall have fourteen (14) days to file an amended complaint curing the deficiencies in the federal claims. If an amendment is not filed within this time, Plaintiffs' § 1981 claims shall be dismissed with prejudice, and the Court shall enter an Order remanding the remaining state law claims to the Superior Court of New Jersey. An appropriate Order accompanies this Opinion.

DATED: July 1, 2010　　　　　　　　　　　　/s/ Jose L. Linares  
　　　　　　　　　　　　　　　　　　　　　JOSE L. LINARES  
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE